UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| EMILY BACCARI; DOMINICK GROSSI; HEATHER HYDEN; HALEY SAMS; and VITO SCAROLA, on behalf of themselves and all others similarly situated, | Case No. _____ |
| *Plaintiffs,* | CLASS ACTION COMPLAINT |
| v. | DEMAND FOR JURY TRIAL |
| HAIN CELESTIAL GROUP, INC., | |
| *Defendant.* | |

Plaintiffs Emily Baccari ("Plaintiff Baccari"), Dominick Grossi ("Plaintiff Grossi"), Heather Hyden ("Plaintiff Hyden"), Haley Sams ("Plaintiff Sams"), and Vito Scarola ("Plaintiff Scarola" and collectively with Plaintiff Baccari, Plaintiff Grossi, Plaintiff Hyden, and Plaintiff Sams, "Plaintiffs") on behalf of themselves and the Class and Subclasses of all others similarly situated defined below, bring this complaint against defendant Hain Celestial Group, Inc. ("Defendant" or "Hain") for its negligent, reckless, and/or intentional practice of misrepresenting and failing to fully disclose the heavy metals or other ingredients that do not conform to the labels, packaging, or advertising of, or statements concerning, Defendant Hain's products sold throughout the United States, including in this District. Plaintiffs seek both injunctive relief and damages on behalf of the proposed Class and Subclasses (as defined below) including: (i) advertising, and statements of, allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief. Given the concealed nature of Defendant Hain's conduct, Plaintiffs believe that an opportunity to conduct discovery will reveal further support for Plaintiffs' allegations.

## INTRODUCTION

1.     Plaintiffs bring this action on behalf of themselves and a proposed class of individuals that bought baby food sold by Hain that was, unbeknownst to Plaintiffs and members of the Class and Subclasses (but known to Hain), tainted with numerous toxic heavy metals. Plaintiffs and members of the Class and Subclasses seek injunctive and monetary relief based on Hain's false, deceptive, and misleading business practices in violation of the consumer protection statutes of the home states of Plaintiffs and members of the Class and Subclasses.

2.     Parents and other caregivers, including Plaintiffs and members of the Class and Subclasses, reasonably believe that the baby food they purchase for their babies will be healthy, nutritious, and non-toxic. Alarmingly, they were wrong. On February 4, 2021, the United States House of Representatives Committee on Oversight and Reform's Subcommittee on Economic and Consumer Policy (the "House Subcommittee") released a report entitled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[1] (the "Report").  According to the Report, several brands of baby food sold in the United States, including those sold by Defendant Hain, contain unsafe levels of toxic heavy metals including metals such as arsenic, lead, and cadmium.

3.     Given the health risks associated with high levels of toxic heavy metals, the presence of these substances in baby food is a material fact to consumers. Indeed, consumers, such as Plaintiffs and members of the Class and Subclasses (defined below), are unwilling to purchase baby food that contains unsafe levels of toxic heavy metals.

---

[1] *Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury*, Staff Report (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, Feb. 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed February 24, 2021).

4.     Baby food manufacturers hold a special position of public trust; consumers believe that they would not sell products that are unsafe.  Defendant Hain knew that the presence of toxic heavy metals in their baby food was a material fact to consumers, yet omitted and concealed the unsafe level of heavy metals from consumers. To this day, Defendant Hain's baby foods containing dangerous levels of toxic heavy metals bear no label or warning to parents.

5.     Accordingly, Plaintiffs bring this suit on behalf of themselves and a Class of similarly situated individuals for damages resulting from Defendant's sale of baby food that contained unsafe levels of toxic heavy metals.

## PARTIES

6.     Plaintiff Emily Baccari is a citizen of the State of Massachusetts.

7.     Plaintiff Dominick Grossi is a citizen of the Commonwealth of Pennsylvania.

8.     Plaintiff Heather Hyden is a citizen of the State of Texas.

9.     Plaintiff Haley Sams is a citizen of the State of Georgia.

10.     Plaintiff Vito Scarola is a citizen of the State of Florida.

11.     Defendant Hain Celestial Group, Inc. is a Delaware corporation with its principal place of business currently located at 1111 Marcus Avenue, Lake Success, New York, 11042.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendant.

13.     The Court has personal jurisdiction over the Defendant.  The Defendant has transacted business and maintained substantial contact throughout the United States, including in

this District.  Defendant's conduct has taken place in, been directed at, and has had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

14.     Venue is proper in this District because a substantial portion of the events complained of herein took place in this District, and this Court has jurisdiction over the Defendant. Specifically, Defendant's decision-making regarding the marketing of the baby foods at issue, including the decision to omit the material information regarding the toxic heavy metals in the products, was located in this District. Furthermore, Defendant is headquartered in this District.

## FACTUAL BACKGROUND

## I.     HAIN CELESTIAL GROUP, INC.

15.     Defendant Hain manufactures, markets, advertises, labels, represents, warrants, distributes, and sells baby food products throughout the United States under the Earth's Best Organic label, stating "we believe every baby deserves an organic start in life."[2]

16.     Hain claims on its website, under the subheading "Our Promise," that it has "rigorous product testing to guarantee quality and safety."[3] It further promises that "we ensure that the ingredients we procure for our products do not use potentially harmful pesticides or fertilizers. This rigorous quality assurance process allows us to meet the strict standards for organic certification"; that "Earth's Best Organic® infant formulas are produced with milk from cows that are humanely raised and not treated with antibiotics or growth hormones; that "Earth's Best Organic® infant purees in both jars and pouches are produced from high quality, great tasting organic fruits and vegetables";  and that "The Earth's Best Organic® brand is the first complete

---

[2] *Earth's Best,* https://www.earthsbest.com/ (accessed February 25, 2021).

[3] *Earth's Best, Our Promise,* https://www.earthsbest.com/why-earths-best/our-promise (accessed February 24, 2021).

line of organic infant nutrition and care products," stating "we strive to provide better-for-baby products that are pure, safe and sustainable."[4]

17.    Hain redoubles these promises by telling parents concerned about recent reports about tainted Earth's Best Organic Baby Foods: "Nothing is more important to Earth's Best than the trust and confidence of parents that our organic products provide safe nutrition for healthy babies. Our rigorous internal standards and testing procedures ensure Earth's Best products meet or exceed the current federal guidelines. In addition, we work collaboratively with the Baby Food Council (composed of other manufacturers, the Environmental Defense Fund and Cornell University), the Food and Drug Administration and the Department of Agriculture to continuously refine and improve upon the standards to ensure our products exceed safety and nutrition standards – including reducing the levels of heavy metals that occur naturally in soil and water."[5]

18.    Hain produces several types of baby foods under the Earth's Best Organic label, (the "Earth's Best Organic Baby Foods"), including:

- 4+ Months (Stage 1) Baby Food Jar – Turkey & Turkey Broth
- 4+ Months (Stage 1) Baby Food Jar – Chicken & Chicken Broth
- 6+ Months (Stage 2) Baby Food Jar – Apples & Apricots
- 6+ Months (Stage 2) Baby Food Jar – Apples & Plums
- 6+ Months (Stage 2) Baby Food Jar – Pears & Mangos
- 6+ Months (Stage 2) Baby Food Jar – Sweet Potato Apricot
- 6+ Months (Stage 2) Baby Food Jar – Vegetable Turkey
- 6+ Months (Stage 2) Baby Food Jar – Sweet Potatoes
- 6+ Months (Stage 2) Baby Food Jar – Peach Oatmeal Banana
- 6+ Months (Stage 2) Baby Food Jar – Banana Mango
- 6+ Months (Stage 2) Baby Food Jar – Apple Butternut Squash
- 6+ Months (Stage 2) Baby Food Jar – Bananas Peaches & Raspberries
- 6+ Months (Stage 2) Baby Food Jar – Apples & Blueberries
- 6+ Months (Stage 2) Baby Food Jar – Corn & Butternut Squash
- 6+ Months (Stage 2) Baby Food Jar – Chicken & Rice
- 6+ Months (Stage 2) Baby Food Jar – Pears & Raspberries

---

[4] *Id.*

[5] *Earth's Best Parents FAQ, https://www.earthsbest.com/parents/faq/ (*accessed February 25, 2021).

- 6+ Months (Stage 2) Baby Food Jar – Sweet Potato Chicken
- 6+ Months (Stage 2) Baby Food Jar – Winter Squash
- 6+ Months (Stage 2) Baby Food Jar – Pears
- 6+ Months (Stage 2) Baby Food Jar – Bananas Carrots
- 6+ Months (Stage 2) Baby Food Jar – Apples
- 6+ Months (Stage 2) Baby Food Jar – Peas
- 9+ Months (Stage 3) Baby Food Jar – Tender Chicken & Stars
- 9+ Months (Stage 3) Baby Food Jar – Apple Cinnamon Oatmeal
- 6+ Months (Stage 2) Baby Food Pouch – Apple Strawberry Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Whole Breakfast Sweet Potato Cinnamon
- 6+ Months (Stage 2) Baby Food Pouch – Wholesome Breakfast Blueberry Banana
- 6+ Months (Stage 2) Baby Food Pouch – Peach Mango Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Apple Peach Oatmeal Fruit and Grain Puree
- 6+ Months (Stage 2) Baby Food Pouch – Carrots & Broccoli Veggie Puree
- 6+ Months (Stage 2) Baby Food Pouch – Orange Banana Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Butternut Squash Pear Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Whole Breakfast Apple Raisin
- 6+ Months (Stage 2) Baby Food Pouch – Pumpkin & Spinach Veggie Puree
- 6+ Months (Stage 2) Baby Food Pouch – Squash & Sweet Peas Veggie Puree
- 6+ Months (Stage 2) Baby Food Pouch – Sweet Potato Garbanzo Barley Veggie & Protein Puree
- 6+ Months (Stage 2) Baby Food Pouch – Banana Blueberry Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Sweet Potato Apple Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Sweet Potato & Beets Veggie Puree
- 6+ Months (Stage 2) Baby Food Pouch – Banana Raspberry Brown Rice Fruit and Grain Puree
- 6+ Months (Stage 2) Baby Food Pouch – Banana Blueberry Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Apple Sweet Potato Pumpkin Blueberry Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Pasta with Tomato & White Bean
- 6+ Months (Stage 2) Baby Food Pouch – Wholesome Breakfast Banana Apricot Pumpkin with Yogurt Oat & Quinoa Baby Puree
- 6+ Months (Stage 2) Baby Food Pouch – Wholesome Breakfast Strawberry Peach Pear with Yogurt Oat & Quinoa Baby Puree

- 6+ Months (Stage 2) Baby Food Pouch – Spinach Lentil and Brown Rice Veggie & Protein Puree
- 6+ Months (Stage 2) Baby Food Pouch – Butternut Squash Pear Baby Food Puree
- 6+ Months (Stage 2) Baby Food Pouch – Apple Sweet Potato Pumpkin Blueberry Baby Food Puree
- 9+ Months (Stage 3) Baby Food Pouch – Pear Carrot Apricot Baby Food Puree
- 9+ Months (Stage 3) Baby Food Pouch – Pumpkin Cranberry Apple Baby Food Puree
- 9+ Months (Stage 3) Baby Food Pouch – Pumpkin Cranberry Apple Baby Food Puree
- 9+ Months (Stage 3) Baby Food Pouch – Cheesy Pasta with Veggies
- 9+ Months (Stage 3) Baby Food Pouch – Turkey Quinoa Apple Sweet Potato
- 9+ Months (Stage 3) Baby Food Pouch – Chicken Pot Pie
- 9+ Months (Stage 3) Baby Food Pouch – Beef Medley
- 9+ Months (Stage 3) Baby Food Pouch – Chicken Casserole

19.     Hain used words such as "organic" and "stage" and ages such as "4+", "6+", and "9+", to emphasize the foods suitability for consumption by young children and infants.

20.     Earth's Best Organic Baby Foods packaging labels do not list, let alone warn, potential customers that the Hain Baby Food Products contain toxic heavy metals.

## II.   HEAVY METAL NEUROTOXINS & THEIR EFFECT ON CHILD DEVELOPMENT

21.     Baby food producers promote their product testing and safety procedures because parents and caretakers pay attention to what ingredients are in the baby food they purchase for their children. This is because adults do not want to expose their children to substances and/or chemicals that would either harm the child or inhibit the child's development.

22.     One example of harmful substances parents want to avoid exposing their children to are the heavy metals arsenic, lead, mercury, and cadmium. These heavy metals are a type of substance known as neurotoxins, or substances that "alter[] the structure of function of the nervous

system."[6] Exposure to these neurotoxins have been shown to "diminish quality of life, reduce academic achievement, and disturb behavior, with profound consequences for the welfare and productivity of entire societies."[7]

23.     Research continuously shows that exposure to food containing these heavy metals causes "troubling risks for babies, including cancer and lifelong deficits in intelligence[.]"[8] Specifically, the heavy metals "can harm a baby's developing brain and nervous system" and cause negative impacts such as "the permanent loss of intellectual capacity and behavioral problems like attention-deficit hyperactivity disorder (ADHD)."[9] These developmental conditions can be caused by exposure to even trace amounts of these substances.[10]

24.     For these reasons, organizations such as the Food and Drug Administration ("FDA") and the World Health Organization ("WHO") have declared arsenic, lead, cadmium, and mercury "dangerous to human health, particularly to babies and children, who are most vulnerable to their neurotoxic effects."[11] Further, the FDA has acknowledged that "exposure to [these four heavy] metals are likely to have the most significant impact on public health" and has prioritized

---

[6] *Neurotoxin*, https://www.britannica.com/science/neurotoxin (accessed February 24, 2021).

[7] Jane Houlihan and Charlotte Brody, *What's in my baby's food?*, Healthy Babies Bright Futures (Oct. 2019), https://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2020-04/BabyFoodReport_ENGLISH_R6.pdf (accessed Feb. 22, 2021) (hereinafter "Healthy Babies Bright Futures Report"). Healthy Babies Bright Futures Report, at 13.

[8] Healthy Babies Bright Futures Report, at 1.

[9] Healthy Babies Bright Futures Report, at 6.

[10] Healthy Babies Bright Futures Report, at 1.

[11] *See Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury, Staff Report* (the "Report"), Subcommittee on Economic and Consumer Policy of the Committee on Oversight and Reform, at 2, February 4, 2021, https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf (accessed Feb. 4, 2021).

them in connection with its heavy metals workgroup looking to reduce the risks associated with human consumption of heavy metals.[12]

### A.  Arsenic

25.    The heavy metal arsenic has been shown to cause "cognitive deficits among school-age children exposed early in life, and neurological problems in adults who were exposed to arsenic-poisoned milk as infants."[13] The effects of arsenic exposure are irreversible and in addition to the cognitive and neurological effects it has on child development, arsenic also creates a risk of "respiratory, gastrointestinal, hematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the central nervous system[.]"[14]

26.    Arsenic's harmful effects have caused both the U.S. Environmental Protection Agency ("EPA") and U.S. Food and Drug Administration ("FDA") to set standards limiting the allowable amount of arsenic in products meant for human consumption. For example, the FDA has set a limit of 10 parts per billion ("PPB") for apple juice, and the EPA has set the same limit for drinking water. Additionally, the FDA has set a limit of 10 parts per billion for bottled water[15] and is considering limiting the action level for arsenic in rice cereals for infants to 100 ppb.[16] The

---

[12] Report, at 3.

[13] Healthy Babies Bright Futures Report, at 13.

[14] Report, at 10 (quoting Miguel Rodríguez-Barranco et al., *Association of Arsenic, Cadmium and Manganese Exposure with Neurodevelopment and Behavioural Disorders in Children: A Systematic Review and Meta-Analysis* (June 1, 2013), https://pubmed.ncbi.nlm.nih.gov/23570911/).

[15] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (accessed Feb. 22, 2021).

[16] FDA, *Draft Guidance for Industry: Inorganic Arsenic in Rice Cereals for Infants: Action Level* (Apr. 2016), https://www.fda.gov/downloads/Food/GuidanceRegulation/GuidanceDocuments RegulatoryInformation/UCM493152.pdf (accessed Feb. 22, 2021).

FDA has taken action against companies whose products contain arsenic levels exceeding this limit.[17]

### B. Lead

27.    Exposure to the heavy metal lead has been shown to cause harm to children's brain and nervous systems and is associated with a range of negative health outcomes including "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth."[18] Even very low exposure levels to lead "cause lower academic achievement, attention deficits and behavior problems. No safe level of exposure has been identified."[19]

28.    For example, one study found that "children age 0 to 24 months lose more than 11 million IQ points from exposure to arsenic and lead in food."[20] Additionally, studies have established a link between lead exposure and Attention-Deficit/Hyperactivity Disorder (ADHD).[21]

29.    The proven negative effects of lead exposure have caused several health organizations—including the American Academy for Pediatrics, the Environmental Defense Fund, and Consumer Reports—to recommend that lead in baby foods not exceed 1 ppb[22] and "[t]he European Union has set the maximum lead level in infant formula to 20 ppb."[23]

---

[17] *See, e.g. Warning Letter from FDA to Valley Processing, Inc.* (June 2, 2016), https://www.fda.gov/news-events/press-announcements/federal-judge-enters-consent-decree-against-washington-state-juice-processor (accessed Feb. 24, 2021).

[18] Report, at 11.

[19] Healthy Babies Bright Futures Report, at 13.

[20] Healthy Babies Bright Futures Report, at 13.

[21] Report, at 12 (citing Gabriele Donzelli *et al.*, *The Association Between Lead and Attention-Deficit/Hyperactivity Disorder: A Systematic Review* (Jan. 29, 2019), http://www.mdpi.com/1660-4601/16/3/382/htm).

[22] Laura Reiley, *New Report Finds Toxic Heavy Metals in Popular Baby Foods. FDA Failed to Warn Consumers of Risk*, THE WASHINGTON POST (Feb. 4, 2021), available at https://www.washingtonpost.com/business/2021/02/04/toxic-metals-baby-food/ (last accessed Feb. 22, 2021).

[23] *Id.*

C.    **Mercury**

30.    The World Health Organization warns that mercury "may have toxic effects on the nervous, digestive and immune systems, and on lungs, kidneys, skin and eyes" and considered mercury "one of the top ten chemicals or groups of chemicals of major public health concern."[24]

31.    It has been recognized that "[y]oung and unborn children are at greatest risk from mercury exposure because their nervous systems are still developing"[25] and that exposure to even a small amount of the heavy metal mercury can cause "serious health problems, and is a threat to the development of the child [] early in life."[26]  For example, exposure to even low doses of mercury "may delay a child's walking and talking, shorten attention span and cause learning disabilities."[27]

32.    Exposure to mercury has also been linked to higher risk of lower IQ scores and intellectual disability in children[28] and mercury exposure at two and three years of age has been positively associated with autistic behaviors among pre-school age children.[29]

---

[24] *Id.*

[25] Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fertility%20and%20blood%20pressure (accessed Feb. 22, 2021).

[26] *Mercury and health*, https://www.who.int/news-room/fact-sheets/detail/mercury-and-health#:~:text=Exposure%20to%20mercury%20%E2%80%93%20even%20small,%2C%20kidneys%2C%20skin%20and%20eyes (accessed Feb. 24, 2021).

[27] Missouri Dept. of Nat. Resources, *Mercury Can Affect Human Health*, https://dnr.mo.gov/env/mercury/mercury-impact.htm#:~:text=Mercury%20Can%20Affect%20Human%20Health,and%20developmental%20disorders%20in%20humans.&text=In%20low%20doses%2C%20mercury%20may,with%20fertility%20and%20blood%20pressure\ (accessed Feb. 22, 2021).

[28] Healthy Babies Bright Futures Report, at 14.

[29] Report, at 12-3.

33.    The EPA has set a maximum mercury level in drinking water to 2 ppb.[30]

**D.    Cadmium**

34.    The heavy metal cadmium is considered a neurotoxin. Eating food or drinking water with very high cadmium levels severely irritates the stomach, leading to vomiting and diarrhea, and sometimes death. Eating lower levels of cadmium over a long period can lead to kidney damage, and can cause bones to become fragile and break easily. Exposure to cadmium in air has caused lung cancer, and perhaps prostate cancer, in workers. The US Department of Health and Human Services ("HHS") and the EPA, both consider cadmium and cadmium compounds human carcinogens (can cause cancer).[31]

35.    Children with higher cadmium levels are three times more likely to have learning disabilities and participate in special education, according to a new study led by Harvard University researchers.[32]

36.    The EPA has set a maximum cadmium level in drinking water to 5 ppb, the FDA has set a maximum level in bottled water to 5 ppb, and the WHO set a maximum cadmium level in drinking water to 3 ppb.[33]

## SUBSTANTIVE ALLEGATIONS

37.    On November 6, 2019, in response to reports alleging high levels of toxic heavy metals in baby foods, the United States House of Representatives Committee on Oversight and

---

[30] Report, at 32.

[31]    NYS Dept. of Health, *Cadmium in Children's Jewelry*, https://www.health.ny.gov/environmental/chemicals/cadmium/cadmium_jewelry.htm#:~:text=Children%20can%20be%20exposed%20to,to%20cadmium%20in%20children's%20jewelry  (accessed Feb. 22, 2021).

[32] Marla Cone, *Is Cadmium as Dangerous for Children as Lead?*, SCIENTIFIC AMERICAN (Feb. 10, 2012), https://www.scientificamerican.com/article/is-cadmium-as-dangerous-for-children-lead/  (accessed Feb. 22, 2021).

[33] Report, at 29.

Reform Subcommittee on Economic and Consumer Policy (the "Subcommittee") requested internal documents and test results from several of the United States' largest producers of baby foods, including Defendant Hain.

38.     On February 4, 2020, the Subcommittee published a report entitled "Baby Foods Are Tainted With Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury" (the "Report") containing the results of the Subcommittee's investigation.

## I.     HAIN KNOWINGLY SOLD BABY FOODS WITH UNSAFE LEVELS OF TOXIC HEAVY METALS TO UNITED STATES CONSUMERS

39.     The Subcommittee's Report contained findings that Hain knowingly sold baby foods to United States consumers that contained high levels of the toxic heavy metal's arsenic, lead, mercury, and cadmium. By knowingly selling baby foods with unsafe amounts of these toxic heavy metals to United States consumers, Hain knowingly exposed millions of children to substances proven to cause permanent decreases in IQ, diminished future economic productivity, and increased risk of future criminal and antisocial behavior.[34]

40.     The Report found that Hain only tested individual ingredients, and not its final product(s). According to the Subcommittee, this policy "recklessly endangers babies and children and prevents [Hain] from ever knowing the full extent of the danger presented by [Hain's] products."[35]

41.     The Report also made specific findings regarding the presence of toxic heavy metals in baby foods produced by Defendant Hain. These findings include the following:

---

[34] Report, at 2.

[35] Report, at 56-7.

- Hain typically only tested ingredients not finished products, which underrepresents the level of toxic heavy metals.[36] However, Hain sold finished baby food products containing as much as 129 ppb inorganic arsenic.[37] Hain used ingredients testing as high as 309 ppb arsenic.[38] This significantly exceeded even Hain's internal standard.[39] Half of Hain's brown rice baby food contained over 100 ppb arsenic.[40]

- Hain used ingredients that tested as high as 352 ppb lead; used many ingredients containing over 20 ppb lead, including several which tested over 200 ppb lead.[41] This significantly exceeded even Hain's internal standard.[42]

- Hain used multiple ingredients that tested over 20 ppb cadmium, including some that tested up to 260 ppb cadmium.[43]

- Hain, unlike several of its competitors, does not even test for mercury in its baby food.[44]

42.    The Report also revealed that on August 1, 2019, Hain gave a non-public presentation to the FDA. In this presentation, Hain admitted that testing ingredients, rather than final products (which Hain does), "underrepresent[ed]" Toxic Heavy Metal levels in its baby

---

[36] Report, at 5.

[37] Report, at 3.

[38] *Id.*

[39] Report, at 4.

[40] Report, at 5.

[41] Report, at 3.

[42] Report, at 4.

[43] Report, at 3.

[44] Report, at 4.

food products. Indeed, 100% of tested Hain baby food products had "inorganic arsenic levels … higher in the finished baby food than the company estimated they would be based on individual ingredient testing," with levels between 28–93% higher in finished products than ingredients.[45]

43.    During this non-public presentation, Hain also admitted that half of its brown rice baby food products contained over 100 ppb of inorganic arsenic, with an average across all brown rice baby food products of 97.62 ppb.[46] Hain admitted that this was not exclusively caused by naturally occurring toxic heavy metals, but were instead caused by additives regularly used by Hain and other baby food manufactures, such as vitamin and mineral pre-mix.[47]

## II.    DEFENDANT HAIN FALSELY, MISLEADINGLY, AND/OR DECEPTIVELY CLAIMED ITS FOOD WAS FIT FOR CHILD CONSUMPTION

44.    Baby food manufacturers hold a special position of public trust. Consumers believe that they would not sell unsafe products. Consumers also believe that the federal government would not knowingly permit the sale of unsafe baby food. Defendant Hain took advantage of its position.

45.    Hain advertised its products as safe, healthy, nutritious, natural, organic, and safe for consumption. By doing so, Hain had a duty to ensure that its statements regarding its products were true and not false, misleading, or deceptive, yet continued to make false, misleading, and deceptive statements regarding the safety of its baby foods despite knowledge that its baby foods contained unsafe levels of heavy metals.

---

[45] Report, at 5.

[46] *Id.*

[47] *Id.*

46.    Hain violated this duty by marketing and advertising its baby foods through statements regarding the safety of its baby foods despite knowing that its baby foods contained dangerous levels of heavy metals.

47.    As a result of Hain's false, misleading, and deceptive statements, Plaintiffs and members of the Class and Subclasses bought Earth's Best Organic Baby Foods they would not have otherwise bought, and paid more for Earth's Best Organic Baby Foods than they would have paid had it been fully disclosed that Earth's Best Organic Baby Foods contained dangerous levels of heavy metals.

## III.    DEFENDANT HAIN FAILED TO WARN UNITED STATES CONSUMERS THAT ITS BABY FOODS CONTAINED DANGEROUS LEVELS OF HEAVY METALS

48.    Hain knew or should have been aware that a consumer would be feeding its products to children, often making its products the primary source of food for a child. This leads to repeated exposure of the heavy metals to the child.

49.    Hain thus wrongfully and misleadingly advertised and sold the Earth's Best Organic Baby Foods without any label or warning indicating to consumers that these products contain heavy metals, or that these toxins can over time accumulate in the baby's body to the point where poisoning, injury, and/or disease can occur. Hain intentionally omitted these facts from its marketing, advertising and labeling in order to induce and mislead reasonable consumers into purchasing Earth's Best Organic Baby Foods.

## IV.    PLAINTIFF EMILY BACARRI

50.    Plaintiff Emily Baccari is a citizen of the State of Massachusetts.

51.    Plaintiff Baccari has purchased several types of the Earth's Best Organic Baby Foods which, according to the Report, were tainted with unsafe levels of heavy metals during the

Class Period. Plaintiff Baccari made these purchase at Target in Wareham, Massachusetts, Shaw's in Wareham, Massachusetts and Medway Massachusetts, as well as online through Amazon.com.

52.     Plaintiff Baccari would not have made these purchases or would not have paid as much for these products had he known that the Earth's Best Organic Baby Foods contained dangerous levels of heavy metal toxins.

## V.    PLAINTIFF DOMINICK GROSSI

53.     Plaintiff Grossi is a resident of Pennsylvania.

54.     Plaintiff Grossi purchased several types of Earth's Best Organic Baby Foods in 2016 and 2017. Plaintiff Grossi made these purchases at the Walmart stores in Latrobe and Greensburg, Pennsylvania, as well as the Giant Eagle grocery store in Latrobe, Pennsylvania.

55.     Plaintiff Grossi would not have made these purchases or would not have paid as much for these products had he known that the Earth's Best Organic Baby Foods contained dangerous levels of heavy metal toxins.

## VI.    PLAINTIFF HEATHER HYDEN

56.     Plaintiff Hyden is a resident of Texas.

57.     Plaintiff Hyden purchased several types of Earth's Best Organic Baby Foods from September 2020 until recently. Plaintiff Hyden made these purchases at the Walmart store in Marble Falls, Texas, and the H-E-B in Burnet, Texas.

58.     Plaintiff Hyden would not have made these purchases or would not have paid as much for these products had he known that the Earth's Best Organic Baby Foods contained dangerous levels of heavy metal toxins.

## VII.    PLAINTIFF HALEY SAMS

59.     Plaintiff Sams is a resident of Georgia.

60.    Plaintiff Sams purchased several types of Earth's Best Organic Baby Foods from July 2019 through January 2021. Plaintiff Sams made these purchases at the Walmart store located in Rockmart, Georgia.

61.    Plaintiff Sams would not have made these purchases or would not have paid as much for these products had he known that the Earth's Best Organic Baby Foods contained dangerous levels of heavy metal toxins.

**PLAINTIFF VITO SCAROLA**

62.    Plaintiff Vito Scarola is a resident of Florida.

63.    Plaintiff Scarola purchased several types of Earth's Best Organic Baby Foods from October 2016 through December 2018. Plaintiff Scarola made these purchases at grocery stores in an around Orlando, Florida.

64.    Plaintiff Scarola would not have made these purchases or would not have paid as much for these products had he known that the Earth's Best Organic Baby Foods contained dangerous levels of heavy metal toxins.

## TOLLING AND ESTOPPEL

**I.    DISCOVERY RULE TOLLING**

65.    Plaintiffs and the Classes and Subclasses had no way of knowing about Defendant Hain's conduct with respect to the presence of toxic heavy metals.

66.    Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable diligence, could have discovered the conduct alleged herein. Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Hain was engaged in the conduct alleged herein.

67.    For these, reasons, all applicable statutes of limitation have been tolled by discovery rule with respect to claims asserted by Plaintiffs, the Classes, and the Subclasses.

## II.    FRAUDULENT CONCEALMENT TOLLING

68.    By failing to provide notice of the presence of toxic heavy metals in Earth's Best Organic Baby Foods, Defendant Hain concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

69.    Upon information and belief, Defendant Hain intended its acts to conceal the facts and claims from Plaintiff and members of the Classes and Subclasses. Plaintiffs and the members of the Classes and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendant Hain's conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## <u>CLASS ACTION ALLEGATIONS</u>

70.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

71.    Plaintiffs seek class certification on behalf of a class defined as follows:

**NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through the present, purchased the Earth's Best Organic Baby Foods for household or business use, and not for resale (the "Class").

72.    Plaintiff Baccari seeks certification on behalf of a Massachusetts Subclass:

**THE MASSACHUSETTS SUBCLASS:** all persons who are or were citizens of the State of Massachusetts who, from the beginning of any applicable limitations period through the present, purchased the Earth's Best Organic Baby Foods for household or business use, and not for resale (the "Massachusetts Subclass").

73.    Plaintiff Scarola seeks certification on behalf of a Florida Subclass:

**THE FLORIDA SUBCLASS:** all persons who are or were citizens of the State of Florida who, from the beginning of any applicable limitations period through the present, purchased the Earth's Best Organic Baby Foods for household or business use, and not for resale (the "Florida Subclass").

74.     Plaintiff Sams seeks certification on behalf of a Georgia Subclass:

**THE GEORGIA SUBCLASS**: all persons who are or were citizens of the State of Georgia who, from the beginning of any applicable limitations period through the present, purchased the Earth's Best Organic Baby Foods for household or business use, and not for resale (the "Georgia Subclass").

75.     Plaintiff Grossi seeks certification on behalf of a Pennsylvania Subclass:

**THE PENNSYLVANIA SUBCLASS**: all persons who are or were citizens of the Commonwealth of Pennsylvania who, from the beginning of any applicable limitations period through the present, purchased the Earth's Best Organic Baby Foods for household or business use, and not for resale (the "Pennsylvania Subclass").

76.     Plaintiff Hyden seeks certification on behalf of a Texas Subclass:

**THE TEXAS SUBCLASS**: all persons who are or were citizens of the State of Texas who, from the beginning of any applicable limitations period through the present, purchased the Earth's Best Organic Baby Foods for household or business use, and not for resale (the "Texas Subclass").

77.     Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

78.     Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendant and Defendant's predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendant or its parents have a controlling interest, as well as Defendant's current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs

and Defendant; and (f) the legal representatives, successors, and assigns of any such excluded persons.

79.     **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass. Further, the Classes and Subclasses can be readily identified through records maintained by Defendant Hain.

80.     **Numerosity (Rule 23(a)(1))**. The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable. The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Earth's Best Organic Baby Foods.

81.     **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendant owed a duty of care to Plaintiffs and the Classes;

- whether Defendant knew or should have known that the Earth's Best Organic Baby Foods contained, or may contain, heavy metals;

- whether Defendant wrongfully represented and continues to represent that the Earth's Best Organic Baby Foods are natural and safe for human infant consumption;

- whether Defendant wrongfully represented and continues to represent that the Earth's Best Organic Baby Foods are healthy, superior quality, nutritious and safe for consumption;

- whether Defendant wrongfully represented and continues to represent that the Earth's Best Organic Baby Foods are natural;

- whether Defendant wrongfully represented and continues to represent that the Earth's Best Organic Baby Foods appropriate for consumption by various "Stage[s]" of babies;

- whether Defendant wrongfully represented and continues to represent that the manufacturing of the Earth's Best Organic Baby Foods is subjected to rigorous standards, including testing for heavy metals;

- whether Defendant wrongfully failed to disclose that the Earth's Best Organic Baby Foods contained, or may contain, heavy metals;

- whether Defendant's representations in advertising, warranties, packaging, and/or labeling are false, deceptive, and misleading;

- whether those representations are likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, heavy metals as a material fact in purchasing baby food;

- whether Defendant had knowledge that those representations were false, deceptive, and misleading;

- whether Defendant continues to disseminate those representations despite knowledge that the representations are false, deceptive, and misleading;

- whether a representation that a product is healthy, superior quality, nutritious and safe for consumption and does not contain arsenic, mercury, cadmium, and lead is material to a reasonable consumer;

- whether Defendant's representations and descriptions on the labeling of the Earth's Best Organic Baby Foods are likely to mislead, deceive, confuse, or confound consumers acting reasonably;

- whether Defendant violated the laws of the State of Massachusetts;

- whether Defendant violated the laws of the Florida;

- whether Defendant violated the laws of the State of Georgia;

- whether Defendant violated the laws of the Commonwealth of Pennsylvania;

- whether Defendant violated the laws of the State of Texas;

- whether Defendant breached its express warranties;

- whether Defendant breached its implied warranties;

- whether Defendant engaged in unfair trade practices;

- whether Defendant engaged in false advertising;

- whether Defendant's conduct was negligent per se;

- whether Defendant made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class are entitled to declaratory and injunctive relief.

82.    **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Defendant Hain's wrongful conduct that is uniform across the Class and Subclasses.

83.    **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendant has no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

84.    **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose

heavy burdens upon the Courts and Defendant, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

85.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

86.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.

87.     Plaintiffs reserve the right to revise the foregoing class allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

## BREACH OF EXPRESS WARRANTY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

88.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

89.     Defendant Hain marketed and sold the Earth's Best Organic Baby Foods into the stream of commerce with the intent that the Earth's Best Organic Baby Foods would be purchased by Plaintiffs and the Class.

90.     Defendant expressly warranted, advertised, and represented to Plaintiffs and the Class that its Earth's Best Organic Baby Foods were and are safe, healthy, and appropriate for infant and child consumption.

91.     Defendant made these express warranties regarding the Earth's Best Organic Baby Foods' quality, ingredients, and fitness for consumption in writing through its website, advertisements, and marketing materials and on the Earth's Best Organic Baby Foods' packaging and labels. These express warranties became part of the basis of the bargain that Plaintiffs and the Class entered into upon purchasing the Earth's Best Organic Baby Foods.

92.     Defendant's advertisements, warranties, and representations were made in connection with the sale of the Earth's Best Organic Baby Foods to Plaintiffs and the Class. Plaintiffs and the Class relied on Defendant's advertisements, warranties, and representations regarding the Earth's Best Organic Baby Foods in deciding whether to purchase Defendant's products.

93.     Defendant's Earth's Best Organic Baby Foods do not conform to Defendant's advertisements, warranties and representations in that they are not safe, healthy, and appropriate for infant and child consumption; and contain, or may contain, levels of various heavy metals.

94.     Defendant therefore breaches the express warranties by placing Hain Baby Food into the stream of commerce and selling them to consumers, when they have dangerous and/or

toxic levels of heavy metals, and can cause toxicity and adverse health implication, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Defendant Hain. These high levels of heavy metals substantially impair the use, value, safety of Earth's Best Organic Baby Foods.

95.     Defendant Hain was at all times aware, or should have been aware, of the toxic or dangerous levels of heavy metals in Earth's Best Organic Baby Foods. Defendant Hain was on notice of these concerns with their products, but nowhere on the package labeling or on Defendant Hain's website or other marketing materials did Defendant Hain warn Plaintiffs and members of the Class and Subclasses that they were at risk of feeding their children food and/or beverages with toxic or dangerous levels of heavy metals.

96.     Instead, Defendant Hain concealed the high levels of heavy metals contained in the Earth's Best Organic Baby Foods and deceptively represented that these products were safe, healthy, and appropriate for infant or child consumption. Defendant Hain thus utterly failed to ensure that the material representations it was making to consumers were true.

97.     The toxic and/or dangerous levels of heavy metals at issue in the Earth's Best Organic Baby Foods existed when they left Defendant's possession or control and were sold to Plaintiffs and members of the putative classes. The levels of heavy metals contained in the Earth's Best Organic Baby Foods were undiscoverable by Plaintiffs and members of the putative classes at the time of purchase of the Earth's Best Organic Baby Foods.

98.     As manufacturers, marketers, advertisers, distributors and sellers of the Earth's Best Organic Baby Foods, Defendant Hain had exclusive knowledge and notice of the fact that the Earth's Best Organic Baby Foods did not conform to the affirmations of fact and promises.

99.     In addition, or in the alternative, to the formation of an express contract, Defendant made each of the above-described representations to induce Plaintiffs and members of the Class and Subclasses to rely on such representations.

100.     Defendant Hain's affirmations of fact and promises were material, and Plaintiffs and members of the putative classes reasonably relied upon such representations in purchasing the Earth's Best Organic Baby Foods.

101.     All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or Subclasses.

102.     Affording Defendant Hain an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Defendant Hain were placed on reasonable notice of the levels of heavy metals in the Earth's Best Organic Baby Foods and breach of the warranties based their scientific research and expertise in the food production industry. Defendant Hain has had ample opportunity to cure the high level of heavy metal in their Earth's Best Organic Baby Foods to make them safe and healthy for consumption by Plaintiffs and members of the putative classes and their children, but have failed to do so.

103.     Defendant Hain has also had notice of their breach as set forth herein by virtue of the publication of the Report the prior 2019 report issued by Healthy Baby Bright Future.

104.     As a direct and proximate result of Defendant Hain's breaches of express warranty, Plaintiffs and members of the putative classes have been damaged because they did not receive the products as specifically warranted by Defendant Hain. Plaintiffs and members of the putative classes did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment of the Earth's Best Organic Baby Foods.

105.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

106.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

107.    Defendant is a merchant engaging in the sale of goods to Plaintiffs and the Class.

108.    There was a sale of goods from Defendant to Plaintiffs and the Class.

109.    At all times mentioned herein, Defendant manufactured or supplied Earth's Best Organic Baby Foods, and prior to the time the Earth's Best Organic Baby Foods were purchased by Plaintiffs and the Class, Defendant impliedly warranted to them that the Earth's Best Organic Baby Foods were of merchantable quality, fit for their ordinary use (consumption by babies), and conformed to the promises and affirmations of fact made on the Earth's Best Organic Baby Foods' containers and labels, including that the food was natural and safe and appropriate for human infant consumption. Plaintiffs and the Class relied on Defendant's promises and affirmations of fact when they purchased the Earth's Best Organic Baby Foods.

110.    Contrary to these representations and warranties, the Earth's Best Organic Baby Foods were not fit for their ordinary use, consumption by babies, and did not conform to Defendant's affirmations of fact and promises as they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

111.    Defendant breached its implied warranties by selling Earth's Best Organic Baby Foods that failed to conform to the promises or affirmations of fact made on the container or label as each product contained heavy metals and/or unnatural or other ingredients or contaminants that do not conform to the packaging.

112.    Defendant was on notice of this breach, as it was aware of the heavy metals included, or at risk, in the Earth's Best Organic Baby Foods, and based on the public investigation by Healthy Babies Bright Futures that showed Defendant's baby food products as unhealthy and contaminated.

113.    Privity exists because Defendant impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Earth's Best Organic Baby Foods were natural, and suitable for consumption by babies, and by failing to make any mention of heavy metals and/or unnatural or other ingredients.

114.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they have purchased Hain Baby Food that is worth less than the price they paid and that they would not have purchased at all had they known of the presence or risk of heavy metals and/or unnatural or other ingredients.

115.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting breach.

### THIRD CLAIM FOR RELIEF

**FRAUDULENT MISREPRESENTATION**

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

116.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

117.    Defendant falsely represented to Plaintiffs and the Class that the Earth's Best Organic Baby Foods are natural, "organic" and safe for consumption by infants and young children.

118.    Defendant intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class to purchase Earth's Best Organic Baby Foods.

119.    Defendant knew that their representations about Earth's Best Organic Baby Foods were false in that Earth's Best Organic Baby Foods contained, or were at risk of containing, levels of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements. Defendant allowed its packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class.

120.    Plaintiffs and the Class did in fact rely on these misrepresentations and purchased Earth's Best Organic Baby Foods to their detriment. Given the deceptive manner in which Defendant advertised, represented, and otherwise promoted Earth's Best Organic Baby Foods, Plaintiffs' and the Class's reliance on Defendant's misrepresentations was justifiable.

121.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Earth's Best Organic Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known

of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

122.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FOURTH CLAIM FOR RELIEF

### FRAUD BY OMISSION

**(on behalf of Nationwide Class or, alternatively, the State Subclasses)**

123.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

124.    Defendant concealed from and failed to disclose to Plaintiffs and the Class that Earth's Best Organic Baby Foods contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

125.    Defendant was under a duty to disclose to Plaintiffs and the Class the true quality, characteristics, ingredients and suitability of the Earth's Best Organic Baby Foods because: (1) Defendant was in a superior position to know the true state of facts about its products; (2) Defendant was in a superior position to know the actual ingredients, characteristics, and suitability of Earth's Best Organic Baby Foods for consumption by babies; and (3) Defendant knew that Plaintiffs and the Class could not reasonably have been expected to learn or discover that Earth's Best Organic Baby Foods were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Earth's Best Organic Baby Foods.

126.     The facts concealed or not disclosed by Defendant to Plaintiffs and the Class are material in that a reasonable consumer would have considered them important when deciding whether to purchase Earth's Best Organic Baby Foods.

127.     Plaintiffs and the Class justifiably relied on the Defendant's omissions to their detriment. The detriment is evident from the true quality, characteristics, and ingredients of Earth's Best Organic Baby Foods, which is inferior when compared to how Earth's Best Organic Baby Foods are advertised and represented by Defendant.

128.     As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Earth's Best Organic Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known of the risk and/or presence of heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

129.     Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

## NEGLIGENT MISREPRESENTATION

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

130.     Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

131.     Defendant had a duty to Plaintiffs and the Class to exercise reasonable and ordinary care in the formulation, testing, manufacture, marketing, distribution, and sale of Earth's Best Organic Baby Foods.

132.    Defendant breached its duty to Plaintiffs and the Class by formulating, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that do not have the ingredients, qualities, characteristics, and suitability for consumption as advertised by Defendant and by failing to promptly remove Earth's Best Organic Baby Foods from the marketplace or to take other appropriate remedial action.

133.    Defendant knew or should have known that the ingredients, qualities, and characteristics of the Earth's Best Organic Baby Foods were not as advertised or suitable for their intended use, consumption by infants, and were otherwise not as warranted and represented by Defendant. Specifically, Defendant knew or should have known that: (1) the Earth's Best Organic Baby Foods were not nutritious, superior quality, pure, natural, healthy and safe for consumption because they contained, or had a risk of containing, levels of heavy metals and/or other unnatural ingredients or contaminants that do not conform to the packaging; (3) the Earth's Best Organic Baby Foods were adulterated, or at risk of being adulterated, by heavy metals; and (4) the Earth's Best Organic Baby Foods were otherwise not as warranted and represented by Defendant.

134.    As a direct and proximate result of Defendant's conduct, Plaintiffs and the Class have suffered actual damages in that they purchased Earth's Best Organic Baby Foods that were worth less than the price they paid and that they would not have purchased at all had they known they contained, or were at risk of containing, heavy metals and/or unnatural or other ingredients that do not conform to the products' labels, packaging, advertising, and statements.

135.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT

**(on behalf of the Nationwide Class or, alternatively, the State Subclasses)**

136.    Plaintiffs incorporate by reference and reallege each and every allegation contained above, as though fully set forth herein.

137.    Substantial benefits have been conferred on Defendant by Plaintiffs and the Class through the purchase of Earth's Best Organic Baby Foods. Defendant knowingly and willingly accepted and enjoyed these benefits.

138.    Defendant either knew or should have known that the payments rendered by Plaintiffs and the Class were given and received with the expectation that the Earth's Best Organic Baby Foods would have the qualities, characteristics, ingredients, and suitability for consumption represented and warranted by Defendant. As such, it would be inequitable for Defendant to retain the benefit of the payments under these circumstances.

139.    Defendant's acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Defendant to retain the benefits without payment of the value to Plaintiffs and the Class.

140.    Plaintiffs and the Class are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant, plus interest thereon.

141.    Plaintiffs and the Class seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## SEVENTH CLAIM FOR RELIEF

### MASSACHUSETTES CONSUMER PROTECTION ACT

### Mass. Gen. Laws Ann. ch. 93, § 1 (West)

### (Brought on Behalf of Plaintiff Baccari and the Massachusetts Subclass)

142.  Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

143.  Plaintiff Baccari intends to assert and prosecute claims under the Massachusetts Consumer Protection Law, M.G.L. c. 93A et seq. ("MCPL") against Hain. Upon information and belief, Hain does not maintain a place of business in Massachusetts, nor does Hain maintain property or assets in Massachusetts. Plaintiff thus is not required to provide Hain with pre-suit written demand for relief pursuant to M.G.L 93A § 9(3). Notwithstanding, to the extent that such statutory notice is deemed required by the Court, Plaintiff Baccari has provided notice in accordance with M.G.L. c. 93A § 9(3) to Hain. This Count provides notice that this Complaint shall be amended accordingly to demand all appropriate relief, subject to any response by Hain.

144.  Defendant is a "person" as defined by M.G.L.A. 93A § 1(a)

145.  Plaintiff Baccari is an actual or potential consumer of Earth's Best Organic Baby Foods.

146.  Hain engaged in engaged in deceptive or unfair acts or practices in the in the conduct of any trade or commerce, in violation of M.G.L.A. 93A § 2(a), including but not limited to the following:

    (a)  Knowingly or recklessly made a false representation as to the characteristics and use of Earth's Best Organic Baby Foods, in violation of 93A § 2(a);

(b)     Represented that Earth's Best Organic Baby Foods are healthy, natural, and safe for consumption, in violation of 93A § 2(a);

(c)     Advertised Earth's Best Organic Baby Foods with an intent not to sell it as advertised, in violation of 93A § 2(a); and

(d)     Failed to disclose the material information that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals, in violation of 93A § 2(a).

147.    As detailed, *infra,* Defendant Hain's deceptive trade practices significantly impacted the public, because there are millions of consumers of Earth's Best Organic Baby Foods, including Plaintiff Baccari, and Massachusetts Subclass Members.

148.    Defendant Hain's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Earth's Best Organic Baby Foods without being aware that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiffs and members of the Class suffered damages by purchasing Earth's Best Organic Baby Foods because they would not have purchased Earth's Best Organic Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

149.    Defendant Hain's deceptive trade practices caused injury in fact and actual damages Plaintiff Baccari and Massachusetts Subclass Members in the form of the loss or diminishment of value of Earth's Best Organic Baby Foods Plaintiff Baccari and Massachusetts Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Baccari and Massachusetts Subclass Members. The injuries of Plaintiff Baccari and Massachusetts Subclass

Members were to legally protected interests. The gravity of the harm of Defendant Hain's actions is significant and there is no corresponding benefit to consumers of such conduct.

150.    Plaintiff Baccari and Massachusetts Class Members seek relief under 93A § 9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## EIGHTH CLAIM FOR RELIEF

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

### Fla. Stat. §§ 501.201 *et seq.*

### (Brought on Behalf of Plaintiff Scarola and on Behalf of the Florida Subclass)

151.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

152.    Plaintiff Scarola and the Florida Subclass Members are "consumers," as defined by Fla. Stat. § 501.203(7), the products sold by Defendant Hain are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

153.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204. provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

154.    For the reasons discussed herein, Defendant violated and continues to violate FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by Fla. Stat. § 501.201, *et seq*. Defendant Hain's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

155.    At all times mentioned herein, Defendant Hain engaged in trade or commerce in Florida, as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting the people of Florida.

156.    Defendant Hain repeatedly advertised, both on the labels for Earth's Best Organic Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Earth's Best Organic Baby Foods were and are safe and healthy for infant and child consumption. Defendant Hain failed to disclose the material information that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals.

157.    Defendant Hain's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Earth's Best Organic Baby Foods without being aware that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Scarola and Florida Subclass Members suffered damages by purchasing Earth's Best Organic Baby Foods because they would not have purchased Earth's Best Organic Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

158.    Defendant Hain's deceptive trade practices caused injury in fact and actual damages Plaintiff Scarola and Florida Subclass Members in the form of the loss or diminishment of value of Earth's Best Organic Baby Foods Plaintiff Scarola and Florida Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Scarola and Florida Subclass Members. The injuries Plaintiff Scarola and Florida Subclass Members were to legally protected

interests. The gravity of the harm of Defendant Hain's actions is significant and there is no corresponding benefit to consumers of such conduct.

159.    Plaintiff Scarola and the Florida Subclass Members seek relief for the injuries they have suffered as a result of Defendant Hain's unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## NINTH CLAIM FOR RELIEF

### GEORGIA FAIR BUSINESS PRACTICES ACT

### O.C.G.A. §§ 10-1-390 *et seq.*

**(Brought on Behalf of Plaintiff Sams and on Behalf of the Georgia Subclass)**

160.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

161.    Plaintiff Sams intends to assert and prosecute claims under the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390 ("GFBPA") against Hain. Upon information and belief, Hain does not maintain a place of business in Georgia, nor does Hain maintain property or assets in Georgia. Plaintiff thus is not required to provide Hain with pre-suit written demand for relief pursuant to O.C.G.A § 10-1- 399(b).  Notwithstanding, to the extent that such statutory notice is deemed required by the Court, Plaintiff Sams has provided notice in accordance with O.C.G.A § 10-1- 399(b) to Hain.  This Count provides notice that this Complaint shall be amended accordingly to demand all appropriate relief, subject to any response by Hain.

162.    Plaintiff Sams and Georgia Subclass Members are "consumers" within the meaning of O.C.G.A. § 10-1-392(6).

163.    Plaintiff Sams' and Georgia Subclass Members' purchases of Earth's Best Organic Baby Foods are "consumer transactions" within the meaning of O.C.G.A. § 10-1-392(10).

164.    At all times mentioned herein, Defendant Hain engaged in trade or commerce in Georgia, as defined by O.C.G.A. § 10-1-392(28), in that they advertised, distributed, offered for sale, sold or distributed goods or services in Georgia and/or engaged in trade or commerce directly or indirectly affecting the people of Georgia.

165.    The Georgia Fair Business Practices Act ("GFBPA"), O.C.G.A. § 10-1-393(a) provides that "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce are declared unlawful."

166.    For the reasons discussed herein, Defendant Hain violated and continues to violate the GFBPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by O.C.G.A. § 10-1-393 *et seq.* Defendant Hain's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

167.    Defendant Hain repeatedly advertised, both on the labels for Earth's Best Organic Baby Foods, on its websites, and through a national advertising campaigns, among other items, that Earth's Best Organic Baby Foods were and are safe and healthy for infant and child consumption. Defendant Hain failed to disclose the material information that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals.

168.    Defendant Hain's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Earth's Best Organic Baby Foods without being aware that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Sams and Georgia Subclass Members suffered damages by purchasing Earth's Best Organic Baby Foods because they would not have purchased Earth's Best Organic Baby

Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

169.    Defendant Hain's deceptive trade practices caused injury in fact and actual damages Plaintiff Sams and Georgia Subclass Members in the form of the loss or diminishment of value of Earth's Best Organic Baby Foods Plaintiff Sams and Georgia Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Sams and Georgia Subclass Members. The injuries Plaintiff Sams and Georgia Subclass Members were to legally protected interests. The gravity of the harm of Defendant Hain's actions is significant and there is no corresponding benefit to consumers of such conduct.

170.    Plaintiff Sams and Georgia Subclass Members seek relief for the injuries they have suffered as a result of Defendant Hain's unfair and deceptive acts and practices, as provided by O.C.G.A § 10-1-399 and applicable law.

## TENTH CLAIM FOR RELIEF

### PENNSYLVANIA UNFAIR TRADE PRACTICES

### AND CONSUMER PROTECTION LAW

**73 Pa. Cons. Stat. Ann. §§ 201-1 *et seq.***

**(Brought on Behalf of Plaintiff Grossi on Behalf of the Pennsylvania Subclass)**

171.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

172.    Plaintiff Grossi and Pennsylvania Subclass Members are residents of the Commonwealth of Pennsylvania.

173.    At all times mentioned herein, Defendant Hain engaged in "trade" or "commerce" in Pennsylvania, as defined by 73 Pa. Cons. Stat. Ann. § 201-2(3), in that they advertised, offered for sale, and sold provided goods, property, or services primarily for personal, family, or household

purposes, and advertised, solicited, offered for sale, and sold "services", "property", "article[s]", "commodit[ies]" or "thing[s] of value" in Pennsylvania.

174.    Plaintiff Grossi and Pennsylvania Subclass members purchased Earth's Best Organic Baby Foods "primarily for personal, family or household purposes." 73 Pa. Const. Stat. Ann. § 201-9.2.

175.    Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTCPL"), 73 Pa. Cons. Stat. Ann. § 201-3 provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . are hereby declared unlawful."

176.    For the reasons discussed herein, Defendant violated and continues to violate the UTCPL by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by UTCPL §§ 201-1 *et seq.* Defendant Hain's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

177.    Defendant Hain repeatedly advertised, both on the labels for Earth's Best Organic Baby Foods, on its websites, and through a national advertising campaigns, among other items, that Earth's Best Organic Baby Foods were and are safe and healthy for infant and child consumption. Defendant Hain failed to disclose the material information that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals.

178.    Defendant Hain's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Earth's Best Organic Baby Foods without being aware that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or

practices, Plaintiff Grossi and Pennsylvania Subclass Members suffered damages by purchasing Earth's Best Organic Baby Foods because they would not have purchased Earth's Best Organic Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

179.    Defendant Hain's deceptive trade practices caused injury in fact and actual damages Plaintiff Grossi and Pennsylvania Subclass Members in the form of the loss or diminishment of value of Earth's Best Organic Baby Foods Plaintiff Grossi and Pennsylvania Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Grossi and Pennsylvania Subclass Members. The injuries Plaintiff Grossi and Pennsylvania Subclass Members were to legally protected interests. The gravity of the harm of Defendant Hain's actions is significant and there is no corresponding benefit to consumers of such conduct.

180.    Plaintiff Grossi and Pennsylvania Subclass Members seek relief for the injuries they have suffered as a result of Defendant Hain's unfair and deceptive acts and practices, as provided by 73 Pa. Cons. Stat. Ann. § 201-9.2 and applicable law.

## ELEVENTH CLAIM FOR RELIEF

### TEXAS DECEPTIVE TRADE PRACTICES AND CONSUMER PROTECTION ACT

### Tex. Bus. & Com. Code §§ 17.41 *et seq.*

### (Brought on Behalf of Plaintiff Hyden on Behalf of the Texas Subclass)

181.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

182.    Plaintiffs, the Class, and Subclasses intend to assert a claim under the Texas Deceptive Trade Practices Act ("TDTPA") against Defendant. Plaintiffs intend to provide Defendant written notice of the specific complaint and damages to Defendant in accordance with Tex. Bus. & Com. Code § 17.505. Subject to the response, if any, by Defendant within 60 days of

the notice, Plaintiffs, on behalf of themselves and the Classes, shall amend the Complaint to include this Claim for Relief and demand all appropriate relief under the TDTPA.

183.    Plaintiff Hyden and Texas Subclass Members are residents of the State of Texas.

184.    At all material times herein, Defendant Hain engaged in "trade" or "commerce" in as defined by the Texas Deceptive Trade Practices and Consumer Protection Act ("TDTPA").

185.    The Texas Deceptive Trade Practices and Consumer Protection Act, ("TDTPA"), Tex. Bus. & Com. Code § 17.46, makes it unlawful to commit "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce."

186.    For the reasons discussed herein, Defendant violated and continues to violate the TDTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices proscribed by TDTPA §§ 17.41 *et seq*. Defendant Hain's acts and practices, including its material omissions, described herein, were likely to, and did in fact, deceive and mislead members of the public, including consumers acting reasonably under the circumstances, to their detriment.

187.    Defendant Hain repeatedly advertised, both on the labels for Earth's Best Organic Baby Foods Products, on its websites, and through a national advertising campaigns, among other items, that Earth's Best Organic Baby Foods were and are safe and healthy for infant and child consumption. Defendant Hain failed to disclose the material information that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals.

188.    Defendant Hain's representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Earth's Best Organic Baby Foods without being aware that Earth's Best Organic Baby Foods contained unsafe levels of toxic heavy metals. As a direct and proximate result of Defendant's unfair and deceptive acts or practices, Plaintiff Hyden and Texas Subclass Members suffered damages by purchasing Earth's

Best Organic Baby Foods because they would not have purchased Earth's Best Organic Baby Foods had they known the truth, and they received a product that was worthless because it contains unsafe levels of toxic heavy metals.

189.    Defendant Hain's deceptive trade practices caused injury in fact and actual damages Plaintiff Hyden and Texas Subclass Members in the form of the loss or diminishment of value of Earth's Best Organic Baby Foods Plaintiff Hyden and Texas Subclass Members purchased, which allowed Defendant to profit at the expense of Plaintiff Hyden and Texas Subclass Members. The injuries Plaintiff Hyden and Texas Subclass Members were to legally protected interests. The gravity of the harm of Defendant Hain's actions is significant and there is no corresponding benefit to consumers of such conduct.

190.    Plaintiff Hyden and Texas Subclass Members seek relief for the injuries they have suffered as a result of Defendant Hain's unfair and deceptive acts and practices, as provided by TDTPA and applicable law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, prays for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiffs and their counsel to represent the Class and Subclasses, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Earth's Best Organic Baby Foods until the levels of heavy metals are removed or full disclosure of the presence of such appears on all labels, packaging, and advertising;

C.    An order enjoining Defendant from selling the Earth's Best Organic Baby Foods in any manner suggesting or implying that they are healthy, natural, and safe for consumption;

D.    An order requiring Defendant to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing products;

E.    An order requiring Defendant to engage in testing of its finished products to measure the levels of heavy metals; and

F.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiffs demand a trial by jury for all issues so triable.


Dated:  February 26, 2021                    Respectfully submitted,

                                             **SILVER GOLUB & TEITELL LLP**

                                             */s/ Steven L. Bloch*
                                             Steven L. Bloch
                                             Ian W. Sloss (*pro hac vice* to be filed)
                                             Zachary Rynar (*pro hac vice* to be filed)
                                             184 Atlantic Street
                                             Stamford, CT 06901
                                             Telephone: (203) 325-4491
                                             Facsimile: (203) 325-3769
                                             sbloch@sgtlaw.com
                                             isloss@sgtlaw.com
                                             zrynar@sgtlaw.com

                                             *Attorneys for Plaintiff*